UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JAMES HUGHES**, et al.,

    Plaintiffs,

vs.

**STATE OF OHIO**, et al.,

    Defendants.

Case No. 04-CV-559
Judge Gregory L. Frost
Magistrate Judge Abel

## ORDER

Defendant Village of Woodsfield, Ohio ("Woodsfield") filed a motion for summary judgment. (Doc. # 73). Defendant Monroe County ("Monroe County") and Defendant Monroe County Sheriff Monroe Keylor ("Keylor") have also filed a motion for summary judgment. (Doc. # 74). No responses or replies were filed.

Similarly, *pro se* Plaintiff James Hughes ("Hughes") filed a motion for summary judgment on behalf of himself and behalf of Plaintiffs Karen Bott ("Bott"), Corrie Hughes-Bott ("Corie") and James Hughes-Bott ("James Jr."). (Doc. # 78). Monroe County and Keylor move the Court to strike Plaintiff's motion because it was filed on July 29, 2005, well after the Court's April 30, 2005 dispositive motion deadline. (Doc. # 79; Doc. # 55). The Court is aware that it must treat *pro se* filings liberally. However, Plaintiff's *pro se* status does not relieve him of his duty to adhere to readily understandable time deadlines of which he is aware, including the Court's November 5, 2004 Scheduling Order. (Doc. # 55); *Sayah v. Brown County Bd. of Comm'rs*, 2005 U.S. Dist. LEXIS 15225, * * 17-18 (S.D. OH 2005) (citing *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991). Hence, the Court **GRANTS** the motion of Monroe County and

Keylor to strike Plaintiffs' motion for summary judgment, and **ORDERS** Doc. # 78 stricken from the record.

Moreover, the Court notes that Hughes is not an attorney but that he is attempting to assert claims on behalf of Karen, Corie, and James, Jr. (Doc. # 41). This he cannot do. "Parents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to [their] parent or representative." *Shepherd v. Wellman*, 313 F.3d 963, 970-71 (6th Cir. 2002). Likewise, Karen's cause of action is her own and James, as a non-lawyer, cannot raise claims on her behalf. *See Williams v. Global Constr. Co., Ltd.*, 498 N.E.2d 500, 501 (Ct. App. 10th Dist. Ohio 1985). Additionally, Karen, Corie, and James, Jr. did not sign the Amended Complaint as Fed. R. Civ. P. 11 requires. The Court therefore dismisses any and all claims Hughes attempts to assert on behalf of Karen, Corie, and James, Jr. (*See* Doc. # 73).

With these procedural issues out of the way, the Court will now examine the merits of the pending motions for summary judgment.

## BACKGROUND

**A.     PARTIES**

Hughes lives with Bott and their two children, Corie and James, Jr. in Ostrander, Ohio. (Doc. # 41). *Id.* Hughes and Bott are not married.

The Amended Complaint lists various governmental officials and entities as Defendants. Plaintiffs first list the Woodsfield as a Defendant. *Id.* According to Plaintiffs, Woodsfield is an Ohio corporation "engaged in the business of transmitting and distributing electric current." *Id.* at ¶¶ 9, 14.

The Amended Complaint also names the State of Ohio, as well as Ohio's Governor, Bob Taft ("Taft"); Secretary of State, Kenneth Blackwell ("Blackwell"); and Attorney General Jim Petro ("Petro") as Defendants. Hughes' Amended Complaint states that Taft, Blackwell, and Petro are fiduciaries for the State of Ohio. *Id.* at ¶¶ 4, 5, 6. As such, it appears to the Court that those individuals are being sued in their official capacities only.

Next, Defendants William Harris ("Harris") and Manfred [sic] Keylor ("Keylor") are described as fiduciaries for Defendant Monroe County, which is located in Ohio. *Id.* at ¶¶ 7, 8. Plaintiffs identify Monroe County as a "legal entity under State of Ohio [sic] operating within Ohio." *Id.* at ¶ 7. Plaintiffs state that Defendant Mark Mulligan ("Mulligan") is a fiduciary for Ottawa County. *Id.* at ¶ 11. It appears that Defendant Mulligan is the Ottawa County Prosecuting Attorney, or was at the time of the events at issue. *Id.* at Ex. 3. Finally, Plaintiffs depict Defendant Mark Costine ("Costine") as a Belmont County fiduciary. *Id.* at ¶¶ 12, 13. The amended complaint fails to state whether Harris, Keylor, and Costine are being sued in their individual or official capacities, or both.

**B.    CLAIMS**

The Court, mindful of the fact that it must hold this *pro se* Amended Complaint to a less stringent standard than a complaint filed by an attorney, has diligently attempted to discern what Hughes is alleging. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). What follows is the most reasonable interpretation the Court could muster under the circumstances.

Bott inherited land from her father through a survivorship deed. Apparently, in October 2002 through May 2004, employees of the Woodsfield cut down trees and erected power lines on that land, despite Hughes' objections to Defendants Keylor and Harris. *Id.* at ¶¶ 16, 17, 19.

3

Hughes maintains that those actions constituted a "taking or servitude for which Plaintiff has received no compensation." *Id.* at ¶ 20.  Additionally, Hughes  assert that the police department for Defendant Monroe County prevented Plaintiffs from removing Defendant Woodfield's employees from Plaintiffs' land for trespassing while the employees built the power lines. *Id.* at ¶ 25.

Plaintiffs' amended complaint sets forth several causes of action.  Under the section of the amended complaint that is entitled "Facts," Plaintiffs set forth their first cause of action, which contains three parts.  The first is a trespass claim, and the second is an unlawful takings claim, both against Woodsfield.  Those claims apparently result from allegations that Woodsfield erected  power lines on Plaintiffs' property. *Id.* at ¶¶ 14-22.  The third claim asserts that the Monroe County Sheriff's Department failed to remove the Village of Woodsfield's employees from Plaintiffs' land upon Plaintiffs' request. *Id.* at ¶¶ 23-25, 52.  Next, regarding Monroe County and Keylor, Hughes maintains that Keylor, as a Monroe County Sheriff, unlawfully threatened him with arrest, obstensibly in violation of 42 U.S.C. § 1983, when he protested the presence of Woodsfield's employees on his property.  Plaintiff also claims that Monroe County took part in erecting the power lines over, and removing the trees from, Plaintiff's property. *Id.*  Lastly, Plaintiff claims that Monroe County participated in an improper sale of his property. *Id.*

In an apparent attempt to secure federal question jurisdiction, Hughes alleges that the Defendants' actions violate his rights under the First, Eighth, Ninth, Thirteenth, and Fourteenth Amendments to the Constitution. *Id.* at ¶ 69, 73.  Hughes also lists several federal statutes in his Amended Complaint. *Id.* at ¶ 70.  Among them are 18 U.S.C. § § 241, 242 and 1962.  Those criminal statutes, however, are inapplicable in the instant civil case.  Also inapplicable is 28

U.S.C. § 1350, as that section pertains to the Court's jurisdiction over civil matters involving aliens. *Id.* at ¶ 68.

After ruling on various motions to dismiss, the only claims that remain are those that Plaintiff asserts against Defendants Village of Woodsfield, Monroe County, and Keylor. Each of the remaining Defendants has filed a motion for summary judgment on each of the remaining claims, and those motions are now ripe for examination.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52). However, in ruling on a motion for summary judgment, "a district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).

## DISCUSSION

**I.      VILLAGE OF WOODSFIELD'S MOTION FOR SUMMARY JUDGMENT**

Again, Plaintiff purports to allege two claims against the Woodsfield. First, he alleges that Woodsfield trespassed by erecting power lines over his property. (Doc. # 41). Hughes also alleges that Woodsfield converted his property by timbering it without his permission, which equated to a taking without just compensation. Woodsfield, in turn, posits that he is not the owner of the property at issue and therefore not the real party in interest, and also argues that the current case is barred by the doctrine of res judicata pursuant to two state court decisions rendered by the Monroe County, Ohio Court of Common Pleas. (Doc. # 73 at 5).

After reviewing the Amended Complaint and the Village of Woodsfiled's motion, the Court became concerned with the issue of jurisdiction. Specifically, the Court pondered whether the *Rooker-Feldman* doctrine was applicable in the instant case.[1] However, because the doctrine

---

[1] Pursuant to the Supreme Court's holdings in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Barlow*, 247 F. Supp. 2d at 872 (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06, (1994)). In essence, Hughes argues here that the

only applies when the federal plaintiff was actually a party to the state court ruling which is expressly or implicitly being challenged, the analysis proved short. *Barlow v. Meyers,* 247 F. Supp. 2d 869, 872 (SD OH 2002); *see also United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995). Bott owns the property at issue through a survivorship deed. (Doc. # 73 Ex. 2). Hughes and Bott are not married. Hughes was not a party in the state court proceedings. (Doc. # 73 Ex. 5). Accordingly, *Rooker-Feldman* is inapplicable in the current instance.

Regardless, the Court concludes that Woodsfield is entitled to summary judgment because Hughes lacks standing to assert the remaining claims. Standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). In *Warth*, the Supreme Court explained the basic principles of standing, which mandate that a plaintiff have a "personal stake in the outcome of the controversy" and that the plaintiff must have suffered some real or threatened injury. *Id.* at 498. In order to invoke federal jurisdiction, the party bringing suit bears the burden of establishing: (1) an injury in fact - an invasion of a legally protected interest which is (a) concrete and particularized - "by particularized, we mean that the injury must affect the plaintiff in a personal and individual way," and (b) "actual or imminent, not 'conjectural' or 'hypothetical,'"; (2) a causal connection between the injury and the conduct complained of - the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court;" and (3) it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561

---

state court decision holding that Woodsfield held a valid easement was incorrect because the power project constituted a taking without compensation.

(1992) (internal citations omitted).

Hughes cannot establish the injury in fact requirement. Specifically, he cannot establish a particularized invasion of a legally protected interest. Because Bott, not Hughes, owns the land in question, Hughes does not have a personal stake in the outcome of the purported controversy; therefore, the alleged taking without just compensation does not affect Hughes in a personal and individual way. Furthermore, Hughes is not married to Bott. Finally, he does not live on the land in question. Accordingly, the Court **GRANTS** Woodsfield's motion for summary judgment on all of Hughes "claims" against it.

**II.     MOTION FOR SUMMARY JUDGMENT OF MONROE COUNTY AND KEYLOR**

To reiterate, Hughes asserts that Monroe County and Keylor took part in erecting the power lines over, and removing the trees from, Hughes' property. (Doc. # 41 at ¶ 20). Plaintiff continues by alleging that Keylor improperly threatened to arrest him when he protested the erection of the power lines on "his" property. *Id.* Finally, Hughes claims that Monroe County participated in an improper sale of "his" property. *Id.* Monroe County and Keylor maintain that summary judgment is proper because Hughes lacks standing to bring the claims and that Keylor is entitled to qualified immunity on the improper threat of arrest claim. (Doc. # 74). The arguments of Monroe County and Keylor prove persuasive.

The Court finds that Hughes lacks standing to assert that Monroe County and Keylor: (1) took his property without just compensation by allegedly taking part in erecting the power lines over, and removing the trees from, Hughes' property; and (2) participated in an improper sale of "his" property  for the same reasons that the Court found above that he lacked standing to bring his claims against Woodsfield. Consequently, the Court **GRANTS** Monroe County's and

8

Keylor's motion for summary judgment on his taking and improper sale claims against those Defendants. (Doc. # 74).

Hughes' last remaining claim is that Keylor, as Monroe County Sheriff, improperly threatened to arrest him when Woodsfield erected the power lines on "his" property. (Doc. # 41 at ¶ 25). This appears to be a 42 U.S.C. § 1983 claim for violation of Hughes' Fourth Amendment rights.

Keylor asserts qualified immunity. (Doc. # 74). According to the doctrine of qualified immunity, "government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity involves the following three-step inquiry:

> First, we determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred. Second, we consider whether the violation involved a clearly established constitutional right of which a reasonable person would have known. Third, we determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.

*Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003) (quotation omitted). If the answer to all three questions is "yes," qualified immunity is not proper. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004).

Qualified immunity is proper in this instance because Monroe County and Keylor did not violate Hughes' constitutional rights. The Monroe County, Ohio Court of Common Pleas issued an Order that found that Botts' father had given the Ohio Department of Transportation ("ODOT") an easement on the property in question in exchange for $ 250. (Doc. # 73 Exs. 3, 5).

9

Bott got the property via a survivorship deed from her father. *Id.* at Ex. # 2. Woodsfield sought and obtained a permit from ODOT to construct the power lines on the easement. *Id.* at Ex. # 4.

Woodsfield then attempted to install the power lines. After Hughes resisted, Woodsfield instituted two separate civil actions in the Monroe County Court of Common Pleas. The first sought a declaratory judgment that the easement was valid and permitted Woodsfiled to erect the power lines. (Doc. # 73 at 4). The second action sought a permanent injunction to prohibit Bott from removing or damaging the electric poles herself. *Id.* The Monroe County Court of Common Pleas ruled in favor of Woodsfield in both actions and issued appropriate Orders. *Id.* at Ex. 5.

After the Court had issued its rulings, power workers returned to the property. Hughes considered the power workers to be trespassing. (Doc. # 41 at ¶¶ 17, 25). Police arrived from the Monroe County Sheriff's Office. Hughes admitted in his deposition that the officers merely instructed him to allow the power workers to do their job, or he could be arrested. (Hughes Dep. 34-35). Moreover, the officers were enforcing a valid court order, did not utilize any force, and did not arrest him. (Doc. # 73 at ex. 5). Consequently, the Court holds that Defendants Monroe County and Keylor are entitled to qualified immunity and therefore are also entitled to summary judgment on this claim as they did not violate Hughes' constitutional rights. (Doc. # 74).

## CONCLUSION

The Court **GRANTS** Defendant Village of Woodsfield's motion for summary judgment. (Doc. # 73).

The Court **GRANTS** the motion for summary judgment filed by Defendants Monroe

County and Keylor. (Doc. # 74).

The Court **ORDERS** Hughes' motion for summary judgment stricken from the record. (Doc. # 78).

The Clerk is **ORDERED** to enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division, at Columbus.

    **IT IS SO ORDERED.**

                         /s/   Gregory L. Frost
                         **GREGORY L. FROST**
                         **UNITED STATES DISTRICT JUDGE**